IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| KATHRYN G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 5:20-CV-021-BQ |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Kathryn G. seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Commissioner's decision denying her applications for disability insurance benefits and supplemental security income. The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. The parties did not unanimously consent to proceed before a magistrate judge. The undersigned has considered the parties' briefing and arguments, the administrative record, and applicable law, and in accordance with the order of transfer, files this report and recommends that the district court affirm the Commissioner's decision.

**I.   Statement of the Case**

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits on February 25, 2017, alleging a disability onset date of July 1, 2015 (later amended to July 22, 2015). Tr. 16. Dr. George Lindsey examined Plaintiff as part of a discretionary Consultative Examination on June 6, 2017. Tr. 914–22. The Social Security Administration (SSA) denied her applications on July 10, 2017, and denied the applications upon

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

1

reconsideration on October 16, 2017. Tr. 157, 167. Plaintiff then requested a hearing before an administrative law judge (ALJ). Tr. 175. Represented by counsel, Plaintiff appeared and testified before an ALJ on September 12, 2018. Tr. 55–90. A vocational expert (VE) also testified at the hearing. *Id.*

The ALJ determined on January 28, 2019, that Plaintiff was not disabled because although she could not return to her past relevant work, there were a significant number of jobs existing in the national economy which she could perform. Tr. 16. The Appeals Council denied Plaintiff's request for review. Tr. 1. As a result of this denial, the ALJ's decision became the Commissioner's final decision and is therefore properly before the Court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II. Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g) (2012); *see, e.g.*, *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). A reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's]." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (quoting *Harrell*

*v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). If substantial evidence supports the Commissioner's findings, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g) (2012); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner makes a disability determination by conducting a five-step sequential evaluation to determine whether: (1) the claimant is currently working; (2) the claimant has a "severe impairment"; (3) the impairment meets or equals an impairment listed in Appendix 1 of the regulations; (4) the claimant is capable of performing past relevant work; and (5) the claimant, after taking into account age, education, previous work experience, and residual functional capacity, is capable of performing any other work. 20 C.F.R. § 404.1520(a)(4) (2016); *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). If the Commissioner makes a disability determination at any step in the process, the finding is conclusive and the analysis terminates. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The claimant bears the burden of proof in the first four steps of the analysis. *Id.* If the claimant can satisfy that burden, the Commissioner must then demonstrate that the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* After making such a showing, the burden ultimately shifts back to the claimant to rebut the Commissioner's finding. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

### III. Facts

Plaintiff claims she became disabled on July 22, 2015,[2] due to myriad health issues. Tr. 17–22. Plaintiff obtained a GED and has a previous work history as a commercial cleaner, industrial cleaner, nurse aid, and home attendant. Tr. 27–28.

The ALJ found that "[t]he medical evidence establishes" that Plaintiff has the following impairments: "degenerative joint disease with knee and hip pain complaints, as well as chronic hammer toe deformities and chronic enthesophytes in her left foot, degenerative disk disease with back pain complaints, chronic obstructive pulmonary disease, [and] obesity," in addition to "diagnosed depression, bipolar and anxiety disorders which are technically 'severe' under the Act per SSR 85-28." Tr. 17. The ALJ further noted Plaintiff "does not have an impairment or combination of impairments that are listed in, or that equal in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." Id.

The ALJ assessed Plaintiff's residual functional capacity (RFC) and found that she has the ability "to perform, on a continuing and sustained basis, the exertional and nonexertional requirements of light work activity . . . ." Tr. 26. The ALJ found "that the objective evidence fail[ed] to establish that the claimant has any significant restrictions in her residual functional capacity . . . despite her subjective complaints." Tr. 27. Even so, with the objective evidence and Plaintiff's subjective complaints in mind, the ALJ limited Plaintiff to "performing simple work"—"simple, routine tasks, and . . . making simple work-related decisions—and "lifting up to 20 pounds occasionally and 10 pounds frequently, and to sitting for 6 hours and to standing/walking for 2 hours in an 8-hour work day." Tr. 26–27.

---

[2] Plaintiff originally alleged disability beginning on July 1, 2015. She later amended her alleged onset date to correspond with the date of her 50th birthday. Tr. 16.

Relying on the VE's testimony, the ALJ concluded that while Plaintiff is not capable of performing her past relevant work, she is capable of performing work in the national economy. Tr. 28. The VE testified that "jobs exist in significant numbers in the national economy which a person with the claimant's age, education and vocational background, and residual functional capacity could perform." Tr. 28. With Plaintiff's limitations in mind, the VE suggested jobs such as "office helper (representative DOT #239.567-010), . . . cashier II (representative DOT #211.462-010), . . . and sorter (representative DOT #361.687-014)." *Id.* The VE also noted that based on "her experience in placing people in these jobs and observing workers as they perform the jobs," Plaintiff would have the option to sit or stand at her discretion. Tr. 29. Accordingly, the ALJ determined that Plaintiff was not disabled from the onset date through the date of the decision. *Id.*

Plaintiff argues on appeal that the ALJ erred in two ways: (1) the ALJ's decision is internally inconsistent, i.e., the RFC finding conflicts with SSA regulations and is thus not supported by substantial evidence; and (2) the ALJ failed in his duty to develop the record. Pl.'s Br. 1, ECF No. 19.[3] The Court examines each contention in turn.

## IV. Discussion

### A. The ALJ's determination that Plaintiff is capable of performing light work is supported by substantial evidence.

Plaintiff argues that the ALJ erred by classifying Plaintiff's RFC as light instead of sedentary. Pl.'s Br. 3. According to Plaintiff, the ALJ's RFC determination "is both internally inconsistent and a direct contradiction of Agency policy" because "light work requires the ability to stand and walk for 1/3 to 2/3 of an 8-hour day, or up to 5.3 hours." *Id.* Specifically, Plaintiff asserts that "because any jobs identified under the ALJ's RFC finding would need to be performed

---

[3] Record cites to Plaintiff's briefing corresponds with the ECF pagination.

at a sedentary exertional level under Agency policy, neither the light exertional rules nor any jobs identified under those rules may be used to support a determination of non-disability on the facts of this case." *Id.* at 4. In other words, Plaintiff claims that unless she can perform the full range of light work, she must be disabled. Plaintiff cites several non-binding cases in support. *Id.*

In response, the Commissioner maintains that the ALJ properly determined that Plaintiff could perform light work because Plaintiff ignores relevant portions of the SSA's regulations. Def.'s Br. 6, ECF No. 20. To illustrate the point, the Commissioner cites 20 C.F.R. § 404.1567(b):

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . .

*Id.* (emphasis omitted). The Commissioner contends that Plaintiff's brief focuses entirely on the portion of the regulation that discusses "a good deal of walking or standing" and disregards the portion that supports the ALJ's decision, i.e., Plaintiff's ability to lift ten pounds frequently and twenty pounds occasionally while seated. *Id.* at 6–7. Though Plaintiff submitted a reply brief, it largely reiterates the arguments in her opening brief, e.g., that she "does not meet the full requirements of light work." Pl.'s Reply Br. 1–3, ECF No. 21.

"RFC is what an individual can still do despite his or her limitations." Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It is an assessment of the individual's maximum capacity to do "sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* (emphasis omitted). A regular and continuing basis typically involves eight-hour days, five days per week, or a comparable schedule. *Id.* "RFC is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and is based upon all of the relevant evidence in the case record." *Ewing v. Colvin*, No. 4:13-CV-085-

A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (footnote omitted); *see also* SSR 96–8p, 1996 WL 374184, at *3–5. The ALJ "must consider only limitations and restrictions attributable to medically determinable impairments." SSR 96–8p, 1996 WL 374184, at *2. Put another way, the ALJ considers all symptoms, including pain, so long as the symptom is consistent with objective evidence. The ALJ may make reasonable inferences and is not required to include limitations that the record does not support. *Thornhill v. Colvin*, No. 3:14-CV-335-M, 2015 WL 232844, at *8 (N.D. Tex. Jan. 16, 2015); *see also Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). "To determine the physical exertion requirements of work in the national economy, [the Social Security Administration] classif[ies] jobs as sedentary, light, medium, heavy, and very heavy." 20 C.F.R. § 404.1567. These definitions "describe the requirements for a *full range* of work at a particular exertional level." *Malley v. Astrue*, Civil Action No. 11-614, 2012 WL 520168, at *6 (E.D. La. Jan. 30, 2012), *R. & R. adopted by* 2012 WL 520146 (E.D. La. Feb. 15, 2012); *see generally* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983). In order to perform the full or wide range of light work, an individual "must have the ability to do substantially all of [the] activities [required]." 20 C.F.R. § 404.1567(b); *see also* SSR 83-10.

As set forth above, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) and 20 C.F.R. § 404.1567(b), except that Plaintiff is limited "to lifting up to 20 pounds occasionally and 10 pounds frequently, [] sitting for 6 hours and to standing/walking for 2 hours in an 8-hour work day . . . [and] performing only simple work." Tr. 27. The ALJ determined that Plaintiff's subjective complaints are not entirely consistent with the objective evidence. *Id.* Thus, subject to limitations, the ALJ concluded that Plaintiff is capable of performing light work. *Id.*

Plaintiff contends the ALJ's RFC determination is not supported by substantial evidence and erroneous as a matter of law because light work requires the ability to "stand and walk for 1/3 to 2/3 of an 8-hour day, or up to 5.3 hours," and the ALJ found she can only stand for two hours a day. Pl.'s Br. 3–4 (citing SSR 83-10; 20 C.F.R. §§ 404.1567(b), 416.967(b)). As relevant here, 20 C.F.R. §§ 404.1567(b) and 416.967(b) define light work as including jobs that "require[] a good deal of walking or standing," or jobs that "involve[] sitting most of the time with some pushing and pulling of arm or leg controls." Further, "[t]o be considered capable of performing a full or wide range of light work, [the individual] must have the ability to do substantially all of these activities." *Id.*

In considering these regulatory provisions, the Fifth Circuit has generally found that claimants may perform a *limited* range of work within an RFC classification and nevertheless have the RFC to perform work at that particular exertional level. For example, the Fifth Circuit previously rejected a claimant's contention that she was disabled under facts similar to those presented here, where substantial evidence supported a determination that claimant could perform a limited range of light work. *Landfried v. Apfel*, 218 F.3d 743, 2000 WL 821361, at *3–4 (5th Cir. 2000) (unpublished). There, the ALJ determined that evidence showing the claimant had the capacity to, *inter alia*, walk or stand for two of eight work–day hours, provided sufficient support for a light work RFC finding. *Id.*[4] Similarly, in *Hillman v. Barnhart*, the Fifth Circuit affirmed an ALJ's RFC determination that the claimant could perform a *limited* range of light work because he could fulfil many of the criteria for a light work RFC. 170 F. App'x 909, 913–14 (5th Cir. 2006). In another instance, the court held that the claimant's limitations preventing her from performing *a full range* of sedentary work did not render her disabled because she could still

---

[4] On a separate issue, the court also noted that a sedentary RFC determination "is not tantamount to a finding that [claimant] does not have the [RFC] for a *modified* range of light work." *Id.* at *2 (emphasis added).

8

perform *a wide range* of sedentary work, and the VE was thus able to identify jobs in the national economy she could perform. *Vaughan v. Shalala*, 58 F.3d 129, 131–32 (5th Cir. 1995). Thus, Plaintiff's allegation that the ALJ should have classified her RFC as sedentary simply because she cannot perform a full range of light work is not supported by Fifth Circuit precedent.

Moreover, Plaintiff's claim that she cannot perform light work because she is limited to standing/walking for two hours of an eight-hour work–day has been expressly rejected in this district. *Nino v. Berryhill*, CIVIL ACTION NO. 4:17-CV-100-A, 2018 WL 889454, at *6 (N.D. Tex. Jan. 29, 2018) (citing cases for support) ("Nino's position that his inability to perform the full range of light work because he is limited to standing and walking for two hours in an eight-hour workday and, thus, should have been given an RFC limited to sedentary work has been rejected on multiple occasions."), *R. & R. adopted by* 2018 WL 895601 (N.D. Tex. Feb. 13, 2018); *Ewing*, 2014 WL 2464765, at *10 (explaining that "the ALJ's determination [that claimant has the RFC to perform light work except that he is limited to standing/walking for two hours] did not contradict the regulations and SSRs 83-10 and 83-12"); *Smith v. Chater*, 962 F. Supp. 980, 983 (N.D. Tex. 1997) ("Although Smith's limitations precluded the ALJ from assuming that he could perform the full range of light jobs, they did not prevent the ALJ from finding that significant light jobs were still available to him.").

Other districts within this Circuit have also declined the invitation to follow this reasoning. *Rodriguez v. Saul*, No. EP-18-CV-00385-ATB, 2019 WL 3305610, at *3 (W.D. Tex. July 23, 2019) ("Plaintiff's inability to perform the *full range* of light work based upon the 2-hour stand/walk limitation found in the ALJ's RFC determination does not essentially limit Plaintiff to sedentary work."); *Valverde v. Berryhill*, No. EP-17-CV-00142-ATB, 2017 WL 4853812, at *3 (W.D. Tex. Oct. 25, 2017) ("The Court rejects Plaintiff's position that the inability to perform the

full range of light work required the ALJ to find that Plaintiff could only perform sedentary work."); *Ontiveros v. Colvin*, No. EP-14-CV-158-ATB, 2016 WL 1688028, at *5 (W.D. Tex. Apr. 26, 2016) ("Plaintiff's inability to perform the full range of light work does not mean that he must be limited to sedentary work."); *Malley*, 2012 WL 520168, at *7 ("Because Malley is limited to less than a full range of light work [e.g., standing/walking only two hours per day], the ALJ properly used the testimony of a vocational expert to determine what work Malley is capable of performing."), *R. & R. adopted by* 2012 WL 520146 (E.D. La. Feb. 15, 2012). Based on the foregoing weight of authority, the Court need not address the non-binding case law cited by Plaintiff, other than to note that some authority in the Western District of Texas reaches a different result.[5]

The ALJ's RFC and subsequent Step Five determinations do not contradict Agency regulations as Plaintiff claims. The ALJ posed a series of hypothetical questions to the VE, all of which concerned a hypothetical person with Plaintiff's age, educational and vocational background, and modified RFC. Tr. 86–88. The VE testified that this hypothetical person could not perform Plaintiff's past work, but would be capable of performing light work. The Court notes that Plaintiff does not challenge the ALJ's hypothetical questions posed to the VE. Further, SSR 83-12 specifically states that the ALJ is required to consult a vocational source where an individual's RFC does not "coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967." SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). An ALJ may rely on VE testimony where, as here, the claimant's ability "to perform substantially all the requirements of light work was affected by additional limitations." *Buckley v. Astrue*, No. 07–

---

[5] *See Villarreal v. Colvin*, 221 F. Supp. 3d 835 (W.D. Tex. 2016); *Ferdin v. Colvin*, No. SA-15-CA-29-DAE, 2015 WL 7767980 (W.D. Tex. 2015).

589–FJP–SCR, 2008 WL 4528179, at *2 n.9 (M.D. La. Sept. 30, 2008); *accord Bowling*, 36 F.3d at 435.

In this case, the ALJ relied on VE testimony that "jobs exist in significant numbers in the national economy which a person with claimant's age, educational and vocational background, and residual functional capacity could perform." Tr 28. Such jobs include "office helper (representative DOT #239.567-010), . . . cashier II (representative DOT #211.462-010), . . . and sorter (representative DOT #361.687.014)." *Id.* When the ALJ asked the VE to assume whether a hypothetical person in Plaintiff's position could perform work existing in the national economy, the VE opined that "this hypothetical person could perform unskilled work at the light exertional level which allows the worker to sit or stand at the worker's discretion throughout the work day." Tr. 29–29, 86–88. The VE relied on the Dictionary of Occupational Titles as well as her "experience in placing people in these kinds of jobs, and observing workers as they actually perform this work." Tr. 88.

"A vocational expert is called to testify because of his familiarity with job requirements and working conditions." *Vaughan*, 58 F.3d at 132. "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986), *holding modified by Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000). To dispute a finding that she is capable of performing jobs a vocational expert has identified, Plaintiff must bring evidence to the contrary. *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005). Plaintiff has not done so. Thus, the ALJ's RFC determination and subsequent Step Five finding is supported by substantial evidence, and the undersigned recommends that the district judge dismiss Plaintiff's first point of error.

### B. Plaintiff's claim that the ALJ failed to develop the record with updated medical evidence is similarly without merit.

Plaintiff next argues that the ALJ failed to develop the record due to a "lack of updated opinion evidence." Pl.'s Br. 6. She claims that the ALJ "could have requested a treating source opinion, or even updated records, . . . sought medical expert testimony, . . . [or] ordered an updated consultative examination." *Id.* She further alleges that because she continued to decline, "the ALJ relied on outdated opinion evidence, based on an incomplete medical record, which led to an incomplete RFC determination." *Id.* at 7. The Commissioner asserts that the ALJ was not required to obtain another medical opinion and, in any event, Plaintiff cannot establish prejudice such that reversal is required. Def.'s Br. 8, 12. Plaintiff's reply brief again largely restates her initial arguments. Pl.'s Reply Br. 3–5.

SSA regulations provide no support for, and in fact specifically reject, Plaintiff's position. Plaintiff's brief illustrates this point when she cites various authority explaining that the ALJ *could have* sought additional medical evidence. Pl.'s Br. 6; *see, e.g.*, Hearing, Appeals and Litigation Law Manual (HALLEX) I-2-5-32, 1994 WL 637369 ("The need for ME opinion evidence is generally left to the ALJ's discretion . . . ."). Yet, she cites no authority to support her claim that because the ALJ *could* have done so he *must* have done so. *See* Pl.'s Br. 6.

Plaintiff specifically complains that the ALJ did not order a second consultative examination. *Id.* Yet, Agency regulations do not require a consultative examination at all; rather, they allow for such examinations when necessary. *See, e.g.*, 20 C.F.R. § 404.1545(a)(3) (providing that although claimant is generally "responsible for providing the evidence [the Agency] will use to make a finding about [claimant's] [RFC]," the Agency is "responsible for developing [claimant's complete medical history, including arranging for a consultative examination(s) *if necessary* . . . " (emphasis added)); 20 C.F.R. § 404.1512(b)(2) ("We may ask you to attend one

or more consultative examinations at our expense."); 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment . . . we may ask you to have one or more physical or mental examinations or tests."); 20 C.F.R. § 404.1519 ("The decision to purchase a consultative examination will be made on an individual case basis . . . ."). Ultimately, the ALJ is responsible for the final decision because a disability determination is not a medical opinion. 20 C.F.R. §§ 404.1546(c), 404.1513a(b), 404.1527(d); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

Plaintiff claims that the ALJ "admitted the record was lacking" when he stated, "I also note that opinions of the State agency medical consultants at the initial and reconsideration levels were rendered without the benefit of personally observing the claimant, hearing the testimony, and reviewing all of the pertinent medical reports." Pl.'s Br. 6 (citing Tr. 27); *see* Pl.'s Reply Br. 4. Plaintiff prematurely assumes that the ALJ found a deficiency. Continuing, the ALJ observed that he did "not adopt[] these opinions" because "the determination of a claimant's residual functional capacity is an issue reserved exclusively to the Commissioner." Tr. 27 (citing 20 C.F.R. § 404.1527(d) and 20 C.F.R. § 416.927(d)). The ALJ "afforded their opinions some weight to the extent that they, too," reached the same conclusions. *Id.* An ALJ is entitled to assess the credibility of medical experts and weigh their opinions accordingly. *Greenspan*, 38 F.3d at 237. "In an appropriate case, a disability determination may be based on the testimony of a medical expert who neither treated nor examined the claimant." *Taylor v. Astrue*, No. 3-10-CV-1158-O-BD, 2011 WL 4091506, at *5 (N.D. Tex. June 27, 2011), *R. & R. adopted* by 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011), *aff'd*, 706 F.3d 600 (5th Cir. 2012). And though Plaintiff complains that a year and a half passed between the last medical examination and the ALJ decision, this time lapse is not indicative of error. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)

(explaining that "there is always some time lapse between the consultant's report and the ALJ hearing and decision," and recognizing an ALJ's authority to rely on records "much older" than a few years prior to the ALJ's decision).

Finally, Plaintiff's arguments also fail because the record contains sufficient evidence to conclude that she is not disabled. *See Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). The burden is generally on the claimant to prove that she is disabled; however, the Agency "will develop [the] complete medical history for at least the 12 months preceding the month in which" the claimant filed the application. 20 C.F.R. § 404.1512(b)(1); *accord* 20 C.F.R. § 404.1512(a)(1).

The ALJ received 2,123 pages of medical records and cited to these records throughout his decision. Tr. 16, 57 (admitting Exhibits 1A to 6F); *see also* Tr. 16–20. The ALJ found that "[t]he medical evidence establishes" that Plaintiff has the following impairments: "degenerative joint disease with knee and hip pain complaints, as well as chronic hammer toe deformities and chronic enthesophytes in her left foot, degenerative disk disease with back pain complaints, chronic obstructive pulmonary disease, obesity," in addition to "diagnosed depression, bipolar and anxiety disorders which are technically 'severe' under the Act per SSR 85-28." Tr. 17. Medical records established that Plaintiff "has a history of MHMR treatment, including receiving psychotropic medications and counseling, for mental health problems which dates back to at least early 2014." *Id.* The ALJ noted that Plaintiff alleged she became disabled in July 2015, but that a psychiatric examination in late August 2015 showed that she "demonstrated normal speech, thought processes and thought content with intact memory and attention/concentration." *Id.* Over the next two years, Plaintiff received MHMR treatment and reported drug abuse and a variety of symptoms, though often inconsistent from visit to visit. Tr. 17–19. Health professionals diagnosed Plaintiff with various disorders throughout this time. *Id.* In June 2017, Plaintiff underwent a consultative

physical examination in connection with her disability applications where she discussed her mental and physical ailments. Tr. 19–20. She returned to her treating MHMR psychiatrist off and on until July 2018. Tr. 21.

With these records in mind, the ALJ noted that "[d]uring any given encounter, mental health professionals have given the claimant various diagnoses and have characterized her mental impairment in multiple ways." Tr. 22. The ALJ found that many of Plaintiff's mental and physical diagnoses and alleged symptoms are not supported by clinical evidence. Tr. 22–23. For example, the ALJ noted that Plaintiff "has repeatedly asserted that she has hepatitis C . . . despite the complete lack of any clinical corroboration." *Id.* The ALJ determined "that the objective medical evidence fails to establish that the claimant suffers from any impairment or combination of impairments which meets or equals in severity the requirements of any provision contained in the Listing of Impairments." Tr. 23. "In reaching this conclusion, [the ALJ] considered the opinions of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." *Id.* Next, the ALJ found that Plaintiff has "underlying medical determinable impairments which could reasonably cause some of the symptoms alleged; however, her subjective complaints about the intensity, persistence and limiting effects of her symptoms are not completely consistent with the objective clinical evidence and other evidence." Tr. 24. In regards to Plaintiff's ability to walk or stand, "[t]he record shows that she has some degenerative changes in her lower back and feet which could cause some of the pain she has alleged, and the consultative examiner noted that she had mild wheezing bilaterally which could be the result of chronic obstructive pulmonary disease, as she has alleged." Tr. 26. The ALJ noted that "the report of the consultative physician shows that the claimant retains good physical function, including full use of her hands for manipulative activities

and functional motion in her spine and joints, despite her subjective complaints of pain." Tr. 26. Additionally, "the record indicates that the claimant has been capable of significant physical activity, both at home and at work, despite taking only over-the-counter pain medication." *Id.* With this evidence in mind, the ALJ then determined Plaintiff's RFC.

"It is difficult to characterize such an extensive record as 'inadequate.'" *Cornett v. Astrue*, 261 F. App'x 644, 648–49 (5th Cir. 2008) (finding no basis for reversal, where the ALJ considered over 500 pages of medical evidence, including reports from at least two physicians who opined that claimant's impairments did not preclude him from working). When the claimant alleges an inadequate record, she must also "show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). However, in her briefing, Plaintiff supports her argument that her condition worsened over the relevant time period by discussing information that the ALJ accepted into evidence, and considered, as part of the medical record. Pl.'s Br. 7; Tr. 1656–58, 1669, 2479. That is, Plaintiff does not point to any information that she would have presented and that would have altered the ALJ's decision, had the ALJ properly developed the medical record.

In sum, the Court finds that the ALJ had substantial evidence upon which he could make a disability determination, thereby making it unnecessary to seek additional medical opinions. Thus, the undersigned recommends that the district judge dismiss Plaintiff's second point of error.

## V.  **Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Plaintiff's Complaint with prejudice.

## VI. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 20, 2020

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE